HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHRISTOPHER J. STOCKWELL,

Plaintiff,

v.

SUMITOMO PHARMA
AMERICA, INC.,

Defendant.

Case No.  2:25-cv-00492-RAJ

ORDER ON DEFENDANT'S
MOTION TO DISMISS

ORDER – 1

## I.      INTRODUCTION

THIS MATTER comes before the Court on the Motion to Dismiss (the "Motion," Dkt. # 16) filed by Sumitomo Pharma America, Inc. ("SMPA," "Sumitomo" or the "Defendant").  Plaintiff Christopher J. Stockwell filed a response in opposition to the Motion (the "Response," Dkt. # 19).  SMPA filed a reply in support of the Motion (the "Reply," Dkt. # 20).  For the reasons set forth below,[1] the Court **GRANTS** the Motion and **DISMISSES** Counts I and III of the Complaint with prejudice and Counts II, IV and V without prejudice.[2]

## II.      BACKGROUND

Latuda (lurasidone HCI) is an antipsychotic medication manufactured by SMPA and used to treat schizophrenia and bipolar depression.  Dkt. # 1-2 ¶ 23; Dkt. # 16 at 7.  The drug first received approval from the Food and Drug Administration (FDA) in 2010.  Dkt. # 16 at 7.  Akathisia, an intense feeling of inner restlessness and an uncontrollable urge to move, is listed as a common adverse effect of the medication.  Dkt. # 1-2 ¶ 23; Dkt. # 16 at 7.  The prescription information for Latuda also warns patients of the risks of potential suicidal ideation associated with upward or downward dosage adjustments.  Dkt. # 16 at 7; *see also* Dkt. # 1-2 ¶ 23.

---

[1]      While the parties request oral argument, the court concludes that oral argument is not necessary to decide the Motion. *See* Local Rules W.D. Wash. LCR 7(b)(4).

[2]      SMPA also filed a Declaration of John Devlin in support of the Motion (the "Devlin Declaration," Dkt. # 17), and a Request for Judicial Notice with respect to the documents attached to the Devlin Declaration as Exhibits 1 through 12 (Dkt. # 18). Exhibits 1 through 12 are all publicly accessible FDA documents relating to the medication underpinning Plaintiff's complaint: namely, FDA approval letters, approved drug labels, and drug information on the FDA's website. *See* # 17-1.  Judicial notice of FDA approval letters, drug labels, and other information publicly available on the FDA website is commonplace. *See, e.g.*, *Morris v. Sun Pharma Glob.*, No. CV2010441PAJPRX, 2021 WL 687247, at *3 (C.D. Cal. Feb. 19, 2021) (taking judicial notice of FDA prescription drug approval letter as a "public document available on the FDA website . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."); *In re Epogen & Aranesp Off-Label Marketing & Sales Practices Litigation*, 590 F. Supp. 2d 1282, 1286 (C.D. Cal. 2008) (taking judicial notice of FDA-approved drug labels available on agency website); *Eidson v. Medtronic, Inc.*, 981 F. Supp. 2d 868, 878–79 (N.D. Cal. 2013) (taking judicial notice of documents from FDA's public website).  Accordingly, the Court takes judicial notice of Exhibits 1 through 12 to the Devlin Declaration.

ORDER – 2

Plaintiff alleges that, on September 3, 2022, following a recent increase in his Latuda dose from 40 mg to 60 mg, he "experienced Latuda-induced Akathisia for the first time" for approximately three hours.  Dkt. # 1-2 ¶ 7.  Subsequently, Plaintiff alleges that his dose was again increased from 60 mg to 80 mg, causing him to seek medical treatment on September 15, 2022 for "a panic attack secondary to several hours of acute Akathisia."  *Id.* ¶¶ 9–10.  Plaintiff avers that he developed suicidal ideations during this second episode, and informed his wife that he "might need to kill [him]self if the doctor could not correct the Akathisia."  *Id.* ¶ 10.  Plaintiff was treated with diphenhydramine, administered intravenously, and lorazepam, administered orally, then discharged with instructions to taper off Latuda and follow up with his psychiatrist and primary care physician.  *Id.* ¶ 11.  While this assisted in managing Plaintiff's Akathisia symptoms in the short term, Plaintiff alleges that he needed to continue taking lorazepam on a longer-term basis in order to manage his withdrawal from Latuda.  *Id.* ¶ 12.  At this time, Plaintiff, who was employed as a trial prosecutor at the Seattle City Attorney's Office, informed his Division Chief that he would likely need to take extended medical leave due to the adverse drug reaction that he had been experiencing.  *Id.* ¶¶ 13–14.  However, Plaintiff's supervisor appears to have offered Plaintiff a "strictly filing position" within a different unit which allowed him to work "exclusively from home," "required no court appearances whatsoever," and "allow[ed Plaintiff] to keep [his] entire salary."  *Id.* ¶ 14.

Plaintiff ultimately completed the withdrawal process and had fully discontinued taking Latuda by September 20, 2022.  *Id.* ¶ 15.  Plaintiff claims that his rapid withdrawal from Latuda, in less than a week, was "dangerous," but "was necessary due to the acute suicidal ideations caused by the acute bouts of Akathisia."  *Id.*  He explains that "managing the inevitable suicidal ideations that would be caused by rapid cessation of

ORDER – 3

Latuda was better than managing the acute suicidal ideations that were already being caused by unpredictable acute bouts of Akathisia." *Id.*

Following his withdrawal from Latuda, on or about September 22, 2022, Plaintiff alleges that, "at the urging of [his] medical provider, [his] wife rented a storage unit" to store Plaintiff's firearms due to his suicidal ideation. *Id.* ¶ 16. Five days later, on September 27, 2022, Plaintiff was seen at the University of Washington ("UW") Medicine Primary Care Family Medicine at the Ravenna clinic and excused from work until October 11, 2022. *Id.* ¶ 18. On October 7, 2022, Plaintiff's medical provider at the UW clinic in Ravenna recommended that Plaintiff work remotely until January of 2023. *Id.* ¶ 19. On November 5, 2022, Plaintiff was treated at the UW Montlake Emergency Department for suicidal ideation and insomnia. *Id.* ¶ 20. Plaintiff alleges that his chronic insomnia "continued for at least a year." *Id.* ¶ 22.

On the basis of the foregoing allegations, Plaintiff filed a Complaint for Damages in King County Superior Court, on March 10, 2025, captioned *Christopher J. Stockwell v. Sumitomo Pharma America, Inc.*, Case No. 25-2-07674-1SEA. Dkt. # 1-2. Plaintiff brings the following causes of action against SMPA: (I) Negligence; (II) Strict Liability; (III) Failure to Warn; (IV) Breach of Warranty; and (V) Misrepresentation or Concealment. Dkt. # 1-2 at ¶¶ 24 –37. SMPA removed this case to federal court on March 19, 2025, on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. Dkt. # 1.

SMPA subsequently filed the instant Motion on April 22, 2025, seeking dismissal of all of Plaintiff's claims with prejudice. Dkt. # 16. Plaintiff filed his Response in opposition to SMPA's Motion on May 8, 2025. Dkt. # 19. SMPA filed its Reply in support of its Motion on May 20, 2025. Dkt. # 20.

ORDER – 4

### III.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In analyzing a motion to dismiss, courts "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). "Conclusory allegations and unreasonable inferences, however, are insufficient to defeat a motion to dismiss." *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007).

### IV.    DISCUSSION

#### A.    Count I: Negligence

Plaintiff's first cause of action is titled "Negligence," and pleads, in relevant part: "A product manufacturer can be held liable if the claimant's harm was proximately caused by the manufacturer's negligence. This includes situations where the product was not reasonably safe as designed or because adequate warnings or instructions were not provided." Dkt. # 1-2 ¶ 25 (citing RCW 7.72.030). Notwithstanding the "Negligence" title, Plaintiff's citation to RCW 7.72.030 (and substantive reliance on the first subsection of that provision) makes clear that this is a statutory design defect claim sounding under the Washington Product Liability Act ("WPLA") rather than a common-law negligence claim. *See, e.g.*, *Fortin v. Abbott Lab'ys, Inc.*, No. 2:24-CV-0279-TOR, 2024 WL 5147617, at *3 (E.D. Wash. Dec. 17, 2024), *reconsideration denied*, No. 2:24-CV-0279-TOR, 2025 WL 383159 (E.D. Wash. Jan. 27, 2025). However, design defect claims involving pharmaceutical drugs "are preempted by federal law when they conflict with a

state law risk balancing test." *Fortin*, 2024 WL 5147617, at *3 (citing U.S. Const., Art. VI, cl. 2; *Gade v. National Solid Wastes Management Assn.*, 505 U.S. 88, 108 (1992)). As relevant here, the Federal Food, Drug, and Cosmetic Act ("FDCA") requires the FDA to "approve any name brand or generic drug before a manufacturer may market it in interstate commerce." *Fortin*, 2024 WL 5147617, at *3 (citing 21 U.S.C. § 355). Once a drug has been approved, FDA regulations prohibit the manufacturer from making any major changes to the "qualitative or quantitative formulation of the drug product, including inactive ingredients, or in the specifications provided in the approved application." *Dearinger v. Eli Lilly & Co.*, No. C21-0060-JCC, 2024 WL 416848, at *1 (W.D. Wash. Feb. 5, 2024) (citing 21 C.F.R. § 314.70(b)(2)(i)). Major changes "include, but are not limited to[,] . . . changes in the qualitative or quantitative *formulation* of the drug product." 21 C.F.R. § 314.70(b)(2)(i) (emphasis added.). Here, it is "uncontroverted" that Latuda is an " FDA-approved prescription medication which, under federal law, Defendant is prohibited from altering its formulation without prior FDA approval." *Dearinger*, 2024 WL 416848, at *2. "Consequently, to the extent [Plaintiff's] design defect claim is based on [Latuda's] formulation, it is preempted." *Id.* (citation omitted). Plaintiff's remaining defective "design" claim, which actually "sound[s] in defective *labeling*," *id.*, is addressed more fully in the portion of this Order discussing Count III, Plaintiff's failure to warn claim.

**B.    Count II: Strict Liability**

Plaintiff's second cause of action is labelled "Strict Liability," and pleads, in relevant part: "Under the WPLA, a manufacturer can also be held strictly liable if the product was not reasonably safe in construction or because it did not conform to the manufacturer's express or implied warranties. . . . Strict liability applies to claims where the product deviated from design specifications or performance standards, or where the

ORDER – 6

product did not conform to the express or implied warranties. . . Mr. Stockwell's harm was proximately caused because Sumitomo's product was not reasonably safe in construction or because it did not conform to the manufacturer's express or implied warranties." Dkt. # 1-2 ¶¶ 27–28 (citations omitted). While Plaintiff cites to *Scott v. Amazon.com, Inc.*, 33 Wash. App. 2d 44, 559 P.3d 528 (2024), *review granted*, 4 Wash. 3d 1015, 566 P.3d 90 (2025), *and rev'd*, No. 103730-9, 2026 WL 468578 (Feb. 19, 2026) and RCW 7.72.030(1); the portion of RCW 7.72.030 he cites more closely resembles RCW 7.72.030(2), the manufacturing defect subsection of that provision. The Court accordingly construes Count II of the Complaint as a manufacturing defect claim sounding under the WPLA.[3]

To prevail on a manufacturing defect claim, a plaintiff must demonstrate that the product deviated in some material way from the design specifications or performance standards of the manufacturer, or from otherwise identical (or ostensibly identical) units of the same product line, and that the defects proximately caused the plaintiff's harm. *Staub v. Zimmer, Inc.*, 2017 WL 2506166, at *4 (W.D. Wash. June 9, 2017) (citing RCW 7.72.030(2)(a)). Here, the Complaint does not specify in any manner whatsoever how the treatment Plaintiff received "deviated from its design or performance standards or what specific aspect of the product posed a danger." *Doyle v. Bayer Corp.*, No. C24-1973-MLP, 2025 WL 1666261, at *4 (W.D. Wash. June 12, 2025). Instead, Plaintiff merely states that his "harm was proximately caused because Sumitomo's product was not reasonably safe in construction or because it did not conform to the manufacturer's express or implied warranties." Dkt. # 1-2 ¶ 28. Such a "formulaic recitation of the elements of a cause of action" is insufficient to state a claim under *Iqbal.* 556 U.S. at

---

[3]     For this reason, the Court rejects Defendant's argument that Count II is a design defect claim subject to dismissal for the preemption-based reasons barring Count I. *See* Dkt. # 16 at 16–17.

ORDER – 7

680.  Count II is therefore dismissed.  However, because Plaintiff may theoretically cure his pleading deficiencies with respect to this claim, and because Plaintiff has not yet had an opportunity to amend in this action, the Court's dismissal is without prejudice.

## C.    Count III: Failure to Warn

Plaintiff's third cause of action is titled "Failure to Warn," and pleads, in relevant part: "Claims can be based on the failure to provide adequate warnings or instructions. Under the WPLA, a product is not reasonably safe if the warnings or instructions provided were inadequate given the likelihood and seriousness of the harm."  Dkt. # 1-2 ¶ 30 (citing RCW 7.72.030).  Plaintiff continues: "Mr. Stockwell's harm was proximately caused because Sumitomo's product was not reasonably safe. Their warnings and/or instructions were inadequate given the likelihood and seriousness of the harm."  *Id.* ¶ 31.

### i.    Federal Preemption

The Supreme Court's 2009 decision in *Wyeth v. Levine* provides the applicable framework governing state failure to warn claims against manufacturers after a drug has already been approved by the FDA.  *Wyeth v. Levine*, 555 U.S. 555, 129 S.Ct. 1187 (2009).  In *Levine*, the Court held that these claims survive federal preemption if the manufacturer could independently alter the drug label under the "changes being effected" (CBE) regulation and there is not "clear evidence that the FDA would not have approved a change to [the drug's] label."  *Id.* at 568–72.  To properly plead a failure to warn claim that is not preempted by the FDCA, a plaintiff must "plausibly plead a labeling deficiency that the defendant could have corrected under the [CBE] regulation."  *Roshkovan v. Bristol-Myers Squibb Co.*, No. 23-2912, 2025 WL 972978, at *1 (9th Cir. Apr. 1, 2025) (citing 21 C.F.R. § 314.70(c)(6)(iii); *Wyeth*, 555 U.S. at 568-69).

The CBE regulation allows "drug manufacturers to change a label to reflect newly acquired information if the changes add or strengthen a . . . warning."  *Merck Sharp &*

ORDER – 8

*Dohme Corp. v. Albrecht*, 587 U.S. 299, 314–15 (2019) (citation and internal quotation marks omitted). The FDA defines "newly acquired information" as "data, analyses or other information not previously submitted to the [FDA], which may include . . . data derived from new clinical studies, reports of adverse events, or new analyses of previously submitted data (e.g., meta-analyses)" if the information reveals new or greater risks from taking the drug. 21 C.F.R. § 314.3(b). If a plaintiff cannot plausibly allege the existence of any "newly acquired information," his failure to warn claim is subject to dismissal for failure to state a claim. *See Roshkovan*, 2025 WL 972978, at *1 (affirming dismissal due to plaintiff's failure to identify "newly acquired information" creating a labeling deficiency correctable through the CBE regulation).

The December 4, 2019 FDA Approved Supplemental Label of Latuda (the "December 2019 Label," Dkt. # 17-1 at 285), which applies to the facts underlying Plaintiff's Complaint, advised "patients and caregivers to look for the emergence of suicidality, especially . . . when the dosage is adjusted up or down." Dkt. # 17-1 at 345. The December 2019 Label further noted that "the most common side effects" of Latuda include "restlessness and feeling like you need to move around (akathisia)." *Id.* at 350. Plaintiff does not dispute that the December 2019 Label identifies both risks, but contends that Latuda's label is inadequate given its failure to disclose the risk of "acute suicidal ideations secondary to uncontrollable Akathisia." Dkt. # 1-2 ¶ 23. However, Plaintiff identifies no "newly acquired information" related to this risk that came to light between the FDA's approval of the December 2019 Label and his adverse experience with Latuda beginning in September 2022. *See generally* Dkt. # 1-2 ¶¶ 7 *et seq*. To the contrary, Plaintiff surmises that his experience may have been "novel." *Id.* ¶ 23. Confronted with this characterization, Plaintiff speculates in his Response—without any apparent factual basis—that other cases of suicidality secondary to akathisia "likely"

ORDER – 9

exist, but that SMPA simply "failed to disclose similar findings [to the FDA] prior." Dkt. # 19 at 8. But "mere speculation about information that the defendants may possess is insufficient to plausibly plead" a non-preempted failure to warn claim. *See Utts v. Bristol-Myers Squibb Co.*, 251 F. Supp. 3d 644, 675 (S.D.N.Y. 2017), *aff'd sub nom. Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699 (2d Cir. 2019) (dismissing claims that manufacturers' should have updated labels on the basis of plaintiffs' "speculat[ion] that the defendants may have in their possession 'adverse information relating . . . that is unknown to the FDA.'"). Plaintiff has not met his burden to allege newly acquired information regarding the risk of suicidality secondary to akathisia that created a labeling deficiency correctable through the CBE regulation. Accordingly, Count III is preempted by federal law.

### ii. Learned Intermediary Doctrine

Plaintiff's WPLA failure-to-warn claim is separately subject to Washington's learned intermediary doctrine, as he appears to acknowledge. *See* Dkt. # 1-2 ¶ 30. Under the learned intermediary doctrine, manufacturers of medical products, including drugs, can satisfy their duty to warn patients of the products' risks by providing those warnings to the prescribing physicians, rather than directly to patients. *Taylor v. Intuitive Surgical, Inc.*, 187 Wash. 2d 743, 757, 389 P.3d 517, 524 (2017). Nowhere in the Complaint does Plaintiff assert that SMPA failed to warn his physician about the risks of Akathisia or suicidality associated with Latuda. Plaintiff does assert for the first time in his Response that "SMPA did not provide required warnings to learned intermediaries." Dkt. # 19 at 15. However, this conclusory allegation, which does not appear in the Complaint, is insufficient to save Plaintiff's failure-to-warn claim from defeat under the learned intermediary doctrine. *See Fortin v. Abbott Labs., Inc.*, 2024 WL 5147617, at *5

ORDER – 10

(dismissing failure-to-warn claim based on "bare assertion that [plaintiff's] rheumatologist was not properly warned of the potential risks" associated with drug).

Count III is therefore dismissed. Plaintiff suggests that he may able to overcome the learned intermediary doctrine through amendment by more specifically alleging that his physician would not have prescribed Latuda to him given his diagnosis had SMPA warned physicians of the risk Plaintiff purports to identify. Dkt. # 19 at 15–16. Even crediting this argument, however, the Court concludes that amendment would be futile due to Plaintiff's clear inability to overcome federal preemption. It is apparent from Plaintiff's Reply that, even if given the opportunity to amend, he will not be able to meet the pleading standard required to state a non-preempted failure to warn claim given his inability to identify newly acquired information related to the undisclosed risk he identifies. *See* Dkt. # 19 at 8 (arguing that requiring plaintiffs to present newly acquired information would result in "no person . . . ever" satisfying the pleading standard "as few would have means to produce or procure any such study.") Rather than indicate that he will be able to allege additional facts supporting the existence of newly acquired information on amendment, Plaintiff appears to concede in his Reply that he cannot. The Court accordingly concludes that amendment would be futile, and its dismissal of Count III is with prejudice. *See United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).

**D.      Count IV: Breach of Warranty**

Plaintiff's fourth cause of action is titled "Breach of Warranty," and pleads, in relevant part: "Claims can also be based on the breach of express or implied warranties. This includes situations where the product did not conform to the express warranties made by the manufacturer or to the implied warranties under Title 62A RCW & see RCW

ORDER – 11

7.72.030. Mr. Stockwell's harm was proximately caused because Sumitomo's product was not reasonably safe. Their warnings and/or instructions were inadequate given the likelihood and seriousness of the harm. Mr. Stockwell's harm was proximately caused by Sumitomo's not conforming to applicable express and implied warranties." Dkt. # 1-2 ¶¶ 33–34.  The Court construes Count IV of the Complaint as asserting both breach of express and implied warranty claims under the WPLA, and addresses each of those claims in turn.[4]

### i.  Express Warranty

In order to state a claim for breach of express warranty under the WPLA, a plaintiff must allege that (1) the defendant made a warranty as part of the basis of the bargain; (2) the warranty concerns a material fact about the product; and (3) the warranty was breached.  *Bryant v. Wyeth*, 879 F.Supp.2d 1214, 1226 (W.D. Wash. 2012) (defining express warranty as an "affirmation of fact or promise").  Here, Plaintiff makes no allegations regarding any specific warranty made by SMPA, much less any "material fact" related to that warranty.  Instead, he merely re-alleges that SMPA's product was "not reasonably safe," that their "warnings and/or instructions were inadequate given the likelihood and seriousness of the harm," and that he was harmed by SMPA's "applicable express . . . warranties." Dkt. # 1-2 ¶¶ 33–34.  Such conclusory allegations fall far short of the pleading standards required to sustain a breach of express warranty claim under the WPLA.  *See Doyle*, 2025 WL 1666261, at *4 (citing *Afoa v. China Airlines Ltd.*, 2013 WL 3354388, at *2–3 (W.D. Wash. July 3, 2013)).  Accordingly, Plaintiff's breach of express warranty claim is subject to dismissal.

### ii.  Implied Warranty

---

[4]    For this reason, the Court rejects Defendant's argument that Count IV is a common law breach of warranty claim subject to preemption by the WPLA.  *See* Dkt. # 16 at 18–19.

ORDER – 12

Under the WPLA, a "product manufacturer is subject to strict liability . . . [if] the product was . . . not reasonably safe because it did not conform . . . to the implied warranties under Title 62A RCW." RCW 7.72.030(2). Under Title 62A, implied warranties include the implied warranty of merchantability, and the warranty of merchantability encompasses considerations of the adequacy of the package and label. RCW 62A.2.314(2)(e). However, Plaintiff has "completely failed" to even identify this as the implied warranty he contends SMPA failed to honor, "nor has [he] alleged any facts in support of such a claim." *Laisure-Radke v. Par Pharm., Inc.*, 426 F. Supp. 2d 1163, 1170 (W.D. Wash. 2006). Even if he had more fulsomely attempted to articulate a claim for breach of the implied warranty of merchantability, Plaintiff has not established privity with Defendant. *See Doyle*, 2025 WL 1666261, at *5 (citing *Thongchoom v. Graco Children's Prod., Inc.*, 117 Wn. App. 299, 307 (Wash. Ct. App. 2003)).

Count IV is accordingly dismissed. However, because Plaintiff could theoretically cure his pleading deficiencies with respect to both his breach of express and implied warranty claims, the Court's dismissal is without prejudice.

**E.      Count V: Misrepresentation or Concealment**

Finally, Plaintiff advances a fifth claim titled "Misrepresentation or Concealment," and pleads, in relevant part: "Claims can be based on the misrepresentation, concealment, or nondisclosure of information about the product, whether negligent or innocent." Dkt. # 1-2 ¶ 36. Plaintiff continues: "Mr. Stockwell's harm was proximately caused by Sumitomo's misrepresentation and/or concealment of the extreme dangers its product posed to consumers like him." *Id.* ¶ 37. Plaintiff appears to rely on the WLPA's definitions section, which defines a "product liability claim" as follows:

ORDER – 13

> [A]ny claim or action brought for harm caused by the manufacture, production, making, construction, fabrication, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging, storage or labeling of the relevant product. It includes, but is not limited to, any claim or action previously based on: Strict liability in tort; negligence; breach of express or implied warranty; breach of, or failure to, discharge a duty to warn or instruct, whether negligent or innocent; **misrepresentation**, **concealment**, or **nondisclosure**, whether negligent or innocent; or other claim or action previously based on any other substantive legal theory except fraud, intentionally caused harm or a claim or action under the consumer protection act, chapter 19.86 RCW.

RCW 7.72.010(4) (emphasis added).

SMPA contends that Count V sounds in fraud and is therefore subject to the heightened pleading standard under Federal Rule of Civil Procedure Rule 9(b). Dkt. # 16 at 21 (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003)). To satisfy this heightened standard, "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Id.* at 1106 (internal quotation marks and citation omitted). The circumstances constituting the alleged fraud must be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993). However, it is not clear from the Complaint that Plaintiff's claim "sounds in fraud." In fact, the WPLA expressly distinguishes between claims based on "misrepresentation, concealment, or nondisclosure" and those based on "fraud [or] intentionally caused harm." RCW 7.72.010(4). The Court therefore rejects SMPA's argument that Plaintiff was required to satisfy the heightened pleading requirement under Rule 9(b).

Nevertheless, Count V is still subject to dismissal for failure to state a claim, because Plaintiff fails to satisfy the more permissive standard under Rule 12(b)(6). Plaintiff asserts no claims that SMPA misrepresented or concealed relevant information about Latuda. To the contrary, Plaintiff concedes that SMPA "makes consumers aware"

ORDER – 14

that "much of what [he] experienced can be side effects of taking Latuda." Dkt. # 1-2 ¶ 23. Plaintiff's allegations do not support a plausible claim for misrepresentation or concealment. Count V of the Complaint is therefore dismissed; the Court's dismissal of this cause of action is without prejudice for the same reasons articulated with respect to Counts II and IV.

## V.    CONCLUSION

For all the foregoing reasons, the Court **GRANTS** the Motion and **DISMISSES** this case. Dkt. # 16. The Court's dismissal of Counts I and III is **WITH PREJUDICE**. The Court grants leave to amend Counts II, IV and V, and its dismissal of those counts is **WITHOUT PREJUDICE**.

Dated this 20th day of March, 2026.

_____
The Honorable Richard A. Jones
United States District Judge

ORDER – 15