HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHRISTOPHER J. STOCKWELL,<br><br>Plaintiff,<br><br>v.<br><br>SUMITOMO PHARMA AMERICA, INC.,<br><br>Defendant. | Case No. 2:25-cv-00492-RAJ<br><br>ORDER |

## I. INTRODUCTION

THIS MATTER comes before the Court on the Motion to Dismiss Plaintiff's Amended Complaint (the "Motion," Dkt. # 25) filed by Sumitomo Pharma America, Inc. ("SMPA," "Sumitomo" or the "Defendant"). Plaintiff Christopher J. Stockwell filed a response in opposition to the Motion (the "Response," Dkt. # 29). SMPA filed a reply in support of the Motion (the "Reply," Dkt. # 30). For the reasons set forth below,[1] the Court **GRANTS** the Motion and **DISMISSES** this action with prejudice.

## II. BACKGROUND

Latuda (lurasidone HCI) is an antipsychotic medication manufactured by SMPA and used to treat schizophrenia and bipolar depression. Dkt. # 28 ¶ 21; Dkt. # 25 at 6. Akathisia, an intense feeling of inner restlessness and an uncontrollable urge to move, is listed as a common adverse effect of the medication. Dkt. # 28 ¶ 21; Dkt. # 25 at 7. The prescription information for Latuda also warns patients of the risks of potential suicidal ideation associated with upward or downward dosage adjustments. Dkt. # 25 at 7; *see also* Dkt. # 28 ¶ 21.

Plaintiff alleges that, on September 3, 2022, following a recent increase in his Latuda dose from 40 mg to 60 mg, he "experienced Latuda-induced Akathisia for the first time" for approximately three hours. Dkt. # 28 ¶ 5. Subsequently, Plaintiff alleges that his dose was again increased from 60 mg to 80 mg, causing him to seek medical treatment on September 15, 2022 for "a panic attack secondary to several hours of acute Akathisia." *Id.* ¶¶ 7–8. Plaintiff avers that he developed suicidal ideations during this second episode, and informed his wife that he "might need to kill [him]self if the doctor could not correct the Akathisia." *Id.* ¶ 8. Plaintiff was treated with diphenhydramine,

[1] While the parties request oral argument, the court concludes that oral argument is not necessary to decide the Motion. *See* Local Rules W.D. Wash. LCR 7(b)(4).

administered intravenously, and lorazepam, administered orally, then discharged with instructions to taper off Latuda and follow up with his psychiatrist and primary care physician. *Id.* ¶ 9. While this assisted in managing Plaintiff's Akathisia symptoms in the short term, Plaintiff alleges that he needed to continue taking lorazepam on a longer-term basis in order to manage his withdrawal from Latuda. *Id.* ¶ 10. At this time, Plaintiff, who was employed as a trial prosecutor at the Seattle City Attorney's Office, informed his Division Chief that he would likely need to take extended medical leave due to the adverse drug reaction that he had been experiencing. *Id.* ¶¶ 11–12. However, Plaintiff's supervisor appears to have offered Plaintiff a "strictly filing position" within a different unit which allowed him to work "exclusively from home," "required no court appearances whatsoever," and "allow[ed Plaintiff] to keep [his] entire salary." *Id.* ¶ 12.

Plaintiff ultimately completed the withdrawal process and had fully discontinued taking Latuda by September 20, 2022. *Id.* ¶ 13. Plaintiff claims that his rapid withdrawal from Latuda, in less than a week, was "dangerous," but "was necessary due to the acute suicidal ideations caused by the acute bouts of Akathisia." *Id.* He explains that "managing the inevitable suicidal ideations that would be caused by rapid cessation of Latuda was better than managing the acute suicidal ideations that were already being caused by unpredictable acute bouts of Akathisia." *Id.*

Following his withdrawal from Latuda, on or about September 22, 2022, Plaintiff alleges that, "at the urging of [his] medical provider, [his] wife rented a storage unit" to store Plaintiff's firearms due to his suicidal ideation. *Id.* ¶ 14. Five days later, on September 27, 2022, Plaintiff was seen at the University of Washington ("UW") Medicine Primary Care Family Medicine at the Ravenna clinic and excused from work until October 11, 2022. *Id.* ¶ 16. On October 7, 2022, Plaintiff's medical provider at the UW clinic in Ravenna recommended that Plaintiff work remotely until January of 2023.

*Id.* ¶ 17. On November 5, 2022, Plaintiff was treated at the UW Montlake Emergency Department for suicidal ideation and insomnia. *Id.* ¶ 18. Plaintiff alleges that his chronic insomnia "continued for at least a year." *Id.* ¶ 20.

On the basis of the foregoing allegations, Plaintiff filed a Complaint for Damages in King County Superior Court, on March 10, 2025, captioned *Christopher J. Stockwell v. Sumitomo Pharma America, Inc.*, Case No. 25-2-07674-1SEA (the "Initial Complaint," Dkt. # 1-2). Plaintiff brought the following causes of action against SMPA: (I) Negligence; (II) Strict Liability; (III) Failure to Warn; (IV) Breach of Warranty; and (V) Misrepresentation or Concealment. Dkt. # 1-2 at ¶¶ 24 –37. SMPA removed this case to federal court on March 19, 2025, on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. Dkt. # 1.

SMPA subsequently filed a motion to dismiss the Initial Complaint, seeking dismissal of all of Plaintiff's claims with prejudice (the "Initial Motion," Dkt. # 16). On March 20, 2026, the Court entered an Order (the "Initial Order," Dkt. # 23) granting the Initial Motion in part and dismissing Counts I and III of the Initial Complaint with prejudice. Pursuant to the Initial Order, Plaintiff was permitted to amend Counts II, IV and V. Plaintiff subsequently filed an amended complaint (the "Amended Complaint," Dkt. # 28).

As to Count II (Strict Liability),[2] the Court informed Plaintiff in the Initial Order that the Initial Complaint "does not specify in any manner whatsoever how the treatment Plaintiff received "deviated from its design or performance standards or what specific

---

[2] Plaintiff's Amended Complaint re-numbers Counts II, IV, and V of the Initial Complaint as Counts I, II, and III, respectively. *See* Dkt. # 28. For avoidance of confusion between these amended claims and the previously-dismissed claims, however, the Court will adhere to the numbering set forth in its Initial Order, and will continue to reference the amended claims as Counts II, IV and V.

aspect of the product posed a danger." Dkt. # 23 at 7 (citing *Doyle v. Bayer Corp.*, No. C24 1973-MLP, 2025 WL 1666261, at *4 (W.D. Wash. June 12, 2025)). In the Amended Complaint, Plaintiff adds the following allegations:

- Specific deviation from design/performance standards: [On or about July–September 2022], the Latuda tablets dispensed to Plaintiff in [lot/batch number unknown—subject to discovery] deviated from SMPA's approved design specifications and performance standards in that [the active-ingredient content and/or dissolution profile] fell outside the ranges specified in SMPA's FDA-approved specifications and internal quality control standards, resulting in [superpotent dosing and/or rapid-release characteristics] that posed an acute risk of precipitating severe akathisia and suicidality beyond the risk profile of a conforming Latuda tablet. [Exact lot, assay, and dissolution values to be determined in discovery.]

- The specific aspect that posed a danger was the [out-of-specification potency and/or dissolution rate] that delivered lurasidone at a higher-than-intended exposure and/or absorption rate, thereby triggering acute akathisia episodes closely tied in time to Plaintiff's dosing and dose increase, as reflected by his emergency presentation on September 15, 2022.

Dkt. # 28 ¶¶ 25–26.

In its Initial Order, the Court construed Count IV of the Initial Complaint (Breach of Warranty) as asserting both breach of express and implied warranty claims under the WPLA. Dkt. # 23 at 12. As to express warranty, the Court found that Plaintiff had made no allegations regarding any specific warranty made by SMPA, much less any "material fact" related to that warranty. *Id.* (citing *Bryant v. Wyeth*, 879 F.Supp.2d 1214, 1226 (W.D. Wash. 2012)). As to implied warranty, the Court noted that Plaintiff had "completely failed" to even identify the implied warranty SMPA failed to honor, "nor [] alleged any facts in support of such a claim." *Id.* at 13 (citing *Laisure-Radke v. Par Pharm., Inc.*, 426 F. Supp. 2d 1163, 1170 (W.D. Wash. 2006)). Additionally, the Court found that Plaintiff had not established privity with Defendant. *Id.* (citing *Doyle*, 2025

WL 1666261, at *5). In response, Plaintiff offers the following allegations in the Amended Complaint:

- **Express Warranty.**
  - Specific express warranty: Prior to and at the time of Plaintiff's use, SMPA expressly warranted through its product labeling and promotional materials provided to prescribers and patients that Latuda tablets conform to their labeled strength and meet quality specifications for identity, strength, quality, and purity, and that when used as directed they deliver lurasidone within approved performance parameters. [Exact language to be identified in discovery from SMPA labeling in effect August–September 2022 and SMPA marketing to providers.]
  - Basis of the bargain and materiality: Plaintiff's prescribing provider relied on these express conformity and performance representations in selecting Latuda for Plaintiff and in determining dose escalation from 60 mg to 80 mg; such conformity to labeled strength and performance is a material fact for prescribing decisions and patient safety.
  - Breach: As alleged in Count II, the Latuda tablets dispensed to Plaintiff in [August September 2022] did not conform to the express warranty because the tablets deviated from their labeled strength and/or performance characteristics, causing supra-therapeutic exposure and acute akathisia.

Dkt. # 28 ¶¶ 32–34.

- **Implied Warranty.**
  - Identification of implied warranty and supporting facts: Plaintiff asserts breach of the implied warranty of merchantability under Title 62A RCW, because the Latuda tablets dispensed to Plaintiff in [August–September 2022] were not fit for the ordinary purpose for which such goods are used—safe and effective administration of lurasidone within approved potency and performance parameters—due to the alleged out-of-specification potency and/or dissolution deviation.

- Privity: Plaintiff used Latuda supplied through a prescription filled by a pharmacy in the ordinary chain of distribution; Plaintiff alleges privity or, alternatively, seeks recovery under the WPLA incorporating implied warranty concepts applicable to manufacturers whose goods enter the stream of commerce and are used by the ultimate consumer as intended.

*Id.* ¶¶ 36–37.

Finally, as to Count V (Misrepresentation or Concealment), the Court found that Plaintiff "assert[ed] no claims that SMPA misrepresented or concealed relevant information about Latuda." Dkt. # 23 at 14. Plaintiff offers the following responsive allegations in the Amended Complaint:

- Specific misrepresentations: SMPA represented through labeling and provider-directed materials that Latuda tablets supplied to the market conform to labeled strength and to approved performance specifications suitable for safe administration at prescribed doses, including dose escalations such as from 60 mg to 80 mg. [Exact representations to be identified from SMPA labeling and materials in effect August–September 2022.]

- Concealment/nondisclosure: SMPA failed to disclose to prescribers and patients, including Plaintiff and his provider, known or knowable quality-control deviations and out-of specification risks associated with particular lots or timeframes relevant to Plaintiff's prescriptions that could cause supra-therapeutic exposure and acute akathisia upon dose escalation.

- Causation and reliance within the learned intermediary framework: Plaintiff's provider relied on SMPA's representations that the tablets conformed to labeled strength and performance when prescribing and increasing the dose; had SMPA disclosed the nonconformity risk or identified affected lots, Plaintiff's provider would not have prescribed or escalated the dose, averting Plaintiff's injuries. Plaintiff suggests that he may able to overcome the learned intermediary doctrine through amendment by more specifically alleging that his physician would not have prescribed Latuda to him given his diagnosis had SMPA warned physicians of the risk Plaintiff purports to identify.

Dkt. # 28 ¶¶ 41–43.

In the instant Motion, SMPA contends that these allegations still fail to state a claim for strict liability, breach of warranty, and misrepresentation or concealment. Dkt. # 25 at 8–15. Alternatively, SMPA argues that Plaintiff's claims are impliedly preempted to the extent they seek to privately enforce the FDCA. *Id.* at 15–16. SMPA requests dismissal with prejudice because Plaintiff has already been given an opportunity to amend his complaint, and further amendment would be futile. *Id.* at 16. Plaintiff opposes the Motion, arguing that a number of SMPA's arguments rely on materials improper for the Court's consideration on a motion to dismiss, and submitting that the Amended Complaint properly cures the defects identified in the Court's Initial Order. Dkt. # 29. SMPA reiterates on reply that Plaintiff's three amended claims rest on the same defective theory, argues that Plaintiff's Response fails to meaningfully address SMPA's preemption argument, and contends that, while judicial notice of SMPA's exhibits is proper, the Amended Complaint fails even absent consideration of those exhibits. Dkt. # 30.

## III. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In analyzing a motion to dismiss, courts "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). "Conclusory allegations and unreasonable inferences, however, are insufficient to defeat a motion to dismiss." *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007).

## IV. DISCUSSION

### A. Count II: Strict Liability

As the Court established in its Initial Order, a plaintiff alleging strict liability under the manufacturing defect subsection of the Washington Product Liability Act ("WPLA"), RCW 7.72.030, must allege that the product he received deviated from the manufacturer's design specifications or performance standards, or from otherwise identical (or ostensibly identical) units of the same product line, and that the alleged deviation proximately caused his injury. Dkt. # 23 at 7 (citing *Staub v. Zimmer, Inc.*, 2017 WL 2506166, at *4 (W.D. Wash. June 9, 2017)). The Court initially dismissed Count II without prejudice because the Initial Complaint "[did] not specify in any manner whatsoever how the treatment Plaintiff received deviated from its design or performance standards or what specific aspect of the product posed a danger." *Id.* (citing *Doyle*, 2025 WL 1666261, at *4).

Plaintiff's Amended Complaint does not cure these defects. Instead, he alleges, in conclusory fashion, that certain tablets dispensed to him on or about September 2022 (described as "[lot/batch number unknown—subject to discovery]") deviated from SMPA's approved design specifications and performance standards because "[the active-ingredient content and/or dissolution profile]" fell outside the FDA-approved ranges and "internal quality control standards," resulting in "[superpotent dosing and/or rapid-release characteristics]." Dkt. # 28 ¶ 25. As to the specific aspect of the product that posed a danger, Plaintiff identifies "the [out-of-specification potency and/or dissolution rate] that delivered lurasidone at a higher-than-intended exposure and/or absorption rate," which he alleges triggered his akathisia episodes. *Id.* ¶ 26. As SMPA observes in the Motion, these factual allegations appear to hinge exclusively on "anticipated discovery," including identification of the lot and batch number associated with the tablets prescribed

to him. Dkt # 25 at 8–9. Plaintiff's conclusory assertion that the unidentified tablets he received must have been impacted by dosing deviations is not supported by any quantum of "factual matter," much less at a level of "sufficient level of specificity to raise entitlement to relief above the speculative level." *Grigsby v. Valve Corp.*, No. C12-0553JLR, 2012 WL 5993755, at *3 (W.D. Wash. Nov. 14, 2012) (citing *Twombly*, 550 U.S. at 555).[3] This Court cannot "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679. Accordingly, this claim is subject to dismissal pursuant to Rule 12(b)(6).

**B. Count IV: Breach of Warranty**

**i. Express Warranty**

In order to state a claim for breach of express warranty under the WPLA, a plaintiff must allege that (1) the defendant made a warranty as part of the basis of the bargain; (2) the warranty concerns a material fact about the product; and (3) the warranty was breached. *Bryant v. Wyeth*, 879 F.Supp.2d 1214, 1226 (W.D. Wash. 2012) (defining express warranty as an "affirmation of fact or promise"). The Court previously instructed Plaintiff that the Initial Complaint offered no allegations regarding any specific warranty made by SMPA, much less any "material fact" related to that warranty. Dkt. # 23 at 12. In response, Plaintiff alleges that SMPA expressly warranted "that Latuda tablets conform to their labeled strength and meet quality specifications for identity, strength, quality, and purity, and that when used as directed they deliver lurasidone within

[3] In his Response, Plaintiff argues that, if the Court considers the exhibits submitted by SMPA in support of the Motion, *see* Dkt. # 26, the Court must convert the Motion to a motion for summary judgment under Rule 56. Dkt. # 29 at 7. The Court determines that consideration of the materials submitted by SMPA is unnecessary to resolve the Motion, as the adequacy of the Amended Complaint can be assessed on its face. Accordingly, the Court declines to consider SMPA's request for judicial notice. Dkt. # 26.

approved performance parameters," adding "[Exact language to be identified in discovery from SMPA labeling in effect August–September 2022 and SMPA marketing to providers.]" Dkt. # 28 ¶ 32. Plaintiff's failure to identify the specific alleged express warranty or warranties, by itself, warrants dismissal of this claim. *See Afoa v. China Airlines Ltd.*, 2013 WL 3354388, at *2–3 (W.D. Wash. July 3, 2013) (dismissing express warranty claim based on purported representation regarding safety and absence of defects because allegation "does not quote any specific representation [or] describe where or when the representation was made."); *Doyle*, 2025 WL 1666261, at *4 (dismissing assertion based on alleged warranty that device "would be safe and effective"). Without this specificity, the Court cannot find that SPMA's labels and other materials plausibly amount to an "affirmation of fact" or a "promise by the seller," as opposed to generalized information about the product and its dosing specifications. *Bryant*, 879 F.Supp.2d at 1226. Plaintiff's allegations regarding breach of the warranty also suffer from the same defects applicable to his amended strict liability claim. Accordingly, Plaintiff's breach of express warranty claim remains subject to dismissal.

**ii. Implied Warranty**

Plaintiff's amended breach of implied warranty claim fares no better. While Plaintiff does identify the implied warranty of merchantability under Title 62A RCW as the underlying implied warranty, Plaintiff fails to establish privity with SMPA, as necessary to state an implied warranty claim. Here, Plaintiff merely alleges that he "used Latuda supplied through a prescription filled by a pharmacy in the ordinary chain of distribution." Dkt. # 28 ¶ 37. In Washington, however, courts apply the "sum of the interaction" test to determine whether a manufacturer was sufficiently involved in a transaction. *See Doyle*, 2025 WL 1666261, at *5 (citing *Touchet Valley Grain Growers, Inc. v. Opp & Siebold General Constr. Inc.*, 119 Wn.2d 334, 345–47 (Wash. 1992)).

Here, as in *Doyle*, Plaintiff "do[es] not allege that [the manufacturer] knew of [hi]m, in particular, or that the [product] was designed to [his] particular specifications." *Id.* Nor does he claim that SMPA "delivered the [product] to [hi]m, rather than the hospitals or doctors who directly purchased [it]," or that the manufacturer "joined in the attempts to alleviate [his] symptoms or dispatched anyone to assist." *Id.* As such, he "fail[s] to provide plausible factual allegations to support [his] legal conclusion that [he was] the intended third-party beneficiar[y] of the contract between physicians or providers and [the manufacturer]." *Id.* Accordingly, Plaintiff's implied warranty claim is subject to dismissal.

**C. Count V: Misrepresentation or Concealment**

Finally, the Court dismissed Count V (Misrepresentation or Concealment) without prejudice after finding that Plaintiff had failed to assert "that SMPA misrepresented or concealed relevant information about Latuda." Dkt. # 23 at 14–15. In response, as to misrepresentation, Plaintiff alleges that SMPA "represented through labeling and provider-directed materials that Latuda tablets supplied to the market conform to labeled strength and to approved performance specifications suitable for safe administration at prescribed doses," adding: "[Exact representations to be identified from SMPA labeling and materials in effect August–September 2022.]" Dkt. # 28 ¶ 41. Again, this allegation is contingent on anticipated discovery, and fails to identify, beyond a speculative or conclusory level, that SMPA misrepresented facts concerning Latuda. As to concealment, Plaintiff alleges that SMPA failed to disclose "known or knowable quality-control deviations and out-of-specification risks" associated with the tablets he purportedly received. Dkt. # 28 ¶ 42. As SMPA notes, however, this allegation too reserves the "exact" factual basis for its underlying claim on discovery, which is insufficient to survive a Rule 12(b)(6) dismissal motion. Dkt. # 25 at 14 (citing *Iqbal*,

556 U.S. at 678; *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)). Accordingly, Plaintiff's Misrepresentation or Concealment remains subject to dismissal.

**D. Preemption**

Because the Court dismisses the Amended Complaint for failure to state a claim, the Court declines to reach SMPA's implied preemption argument. Dkt. # 25 at 15–16.

**E. Dismissal Is With Prejudice**

Dismissal without leave to amend is only appropriate when the complaint cannot be saved by amendment. *Creech v. Tewalt*, 84 F.4th 777, 787 (9th Cir. 2023); *see also Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995). The Court previously permitted amendment of Counts II, IV and V of the Initial Complaint to allow Plaintiff an opportunity to cure his pleading deficiencies. Dkt. # 23. Having reviewed the Amended Complaint and the balance of the record, the Court concludes that Plaintiff's claims cannot be saved by further amendment, as they are inherently speculative in nature and lack any basis in fact or law. Because amendment would be futile, the Court concludes that this case should be dismissed with prejudice and without leave to amend.

**V. CONCLUSION**

For the foregoing reasons, the Court the Court **GRANTS** SMPA's Motion to Dismiss for Failure to State a Claim. Dkt. # 25. This action is **DISMISSED WITH PREJUDICE**.

Dated this 19th day of October, 2026.

The Honorable Richard A. Jones
United States District Judge